FILED

February 1, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:40 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | |
|---|---|
| ELLEN WILES,<br>Employee,<br>v.<br><br>DILLARDS,<br>Employer,<br><br>And<br><br>SAFETY NAT'L. CAS. CORP.,<br>Carrier. | ) Docket No.: 2016-05-0933<br>)<br>) State File No.: 29588-201<br>)<br>) Judge Robert Durham<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## EXPEDITED HEARING ORDER FOR BENEFITS

This cause came before the undersigned Workers' Compensation Judge on January 25, 2017, upon the Request for Expedited Hearing filed by Ellen Wiles. The dispositive issues are whether Ms. Wiles' left carpal tunnel syndrome arose primarily out of and in the course and scope of her employment with Dillards, and if so, whether she gave sufficient notice to Dillards of her work injury. The Court holds Ms. Wiles provided sufficient evidence to establish she is likely to prevail at a hearing on the merits that she is entitled to a panel of orthopedic specialists for evaluation, and if necessary, further treatment of her carpal tunnel syndrome. However, she has yet to prove the likelihood of compensability and is thus not entitled to temporary disability benefits and reimbursement of medical expenses at this time.

### History of Claim

Ms. Wiles, age fifty-nine, began working for Dillards department store as a clerk in women's apparel on June 10, 2014, working approximately thirty hours per week. Ms. Wiles has also worked for the Rutherford County school system as a substitute teacher since 2010. Her job duties at Dillards consist of assisting customers, constantly removing clothing from multiple dressing rooms and rehanging them, moving racks of clothes from

1

one part of the store to another, and pricing individual items for markdowns. Ms. Wiles, who is left-hand dominant, testified these duties required her to move and handle individual clothing items sometimes thousands of times during her workday.

Ms. Wiles testified that sometime in early April 2016, as she was stretching her left arm overhead to move a rack of clothes, she felt a transient sting in her left wrist. She stated the effect was only momentary and did not leave any lasting pain or numbness, nor did it affect her ability to use her left upper extremity in any way. A few weeks later, she noticed that a muscle in her left thumb had collapsed. While it looked unusual, it did not cause her any pain, numbness or weakness and did not affect the use of her left hand at all.

Ms. Wiles asserted she continued to perform her regular duties at Dillards but noticed that in early July she began waking up with some numbness in her left fingers. At first, the numbness would immediately resolve, and she thought she was merely sleeping on her hand. Ms. Wiles subsequently started experiencing some pain in her left hand and began wearing a brace to bed, which provided some relief. However, in late July through early August, she worked at Dillards for nine days in a row and on the ninth day worked an eleven-hour shift. Ms. Wiles testified she began experiencing significant pain and numbness in her left hand afterward, which did not resolve.

Therefore, on August 8, she notified her supervisor, Kelly Marksbury, that she was having problems with her left hand and wished to see a doctor through workers' compensation. She testified Ms. Marksbury advised her she would inform the office manager, Carrie Taylor, who would get in touch with her. She waited a week, but after hearing nothing from Ms. Taylor, Ms. Wiles wrote her a note informing her she had reported an injury and required assistance. On August 16, Ms. Wiles filed an accident report in which she stated her problems began "approximately four months ago" when the muscle in her left thumb collapsed, although she felt no pain from it. (Ex. 13.) Dillards provided a panel from which she chose Dr. Frank Thomas for treatment.

Ms. Wiles testified that on her initial visit to Dr. Thomas, he asked if a specific event initiated her symptoms, which led to her recollection of the time in April when she moved the clothing rack and felt a shock in her left wrist. Dr. Thomas noted her complaints and thenar atrophy. He diagnosed her with severe left carpal tunnel syndrome and recommended an orthopedic referral but returned her to work with restrictions. An EMG/NCS performed at his request confirmed Ms. Wiles had moderate left CTS. (Ex. 1 at 2, 3, 14.)

A few weeks later, Ms. Wiles gave a recorded statement to the adjuster on her claim. In the statement, Ms. Wiles stated her problems might have started with the April incident given that her thumb muscle collapsed shortly afterwards. She also stated she had never experienced problems with her left hand or wrist before this time. (Ex. 11.)

2

Dillards then denied her claim on September 20 on the grounds she failed to provide timely notice and did not establish a work-related injury. (Ex. 2.)

Upon the denial, Dillards reassigned Ms. Wiles to regular duty. She felt she could not do so and contacted Dr. Thomas, who advised her to seek treatment with her family physician, Dr. Elizabeth Bray. Dr. Bray took Ms. Wiles off work from Dillards on October 4, which was the last day Ms. Wiles worked there. She also referred her to Dr. Douglas Weikert, an orthopedist. Dr. Weikert performed a left carpal tunnel release on January 3, 2017; however, there is nothing in his records regarding causation. He last saw her on January 17, at which time she reported minimal improvement following surgery, and he wrote a note keeping her off work for an additional three weeks. (Ex. 4 at 4.)

At the hearing, Ms. Wiles introduced a letter from Dr. Thomas stating his opinion that Ms. Wiles' problems began four months prior to her first visit in April when she hyperextended her elbow to reach a rack above her head with symptoms occurring intermittently since that time. He further stated that while she suffers from Type 2 diabetes, she reported she had none of her carpal tunnel complaints prior to the incident in April 2016. Finally, he felt that "it is greater than 51% likelihood that the symptoms and subsequent findings were related to the work event described." (Ex. 6.) Ms. Wiles also entered, without objection, a letter from Brittany Marks, FNP-C, stating that Ms. Wiles' diabetes was "well-controlled" with no history of neuropathy related to diabetes, and it was "unlikely" her carpal tunnel was caused by diabetes. (Ex. 7.)

Several times at the hearing, Ms. Wiles adamantly denied having any problems with her left wrist or hand prior to the events described above. She repeatedly declared she suffered the collapse in April, but had never experienced any pain or numbness in her left wrist or hand until July 2016, and only suffered disabling symptoms following her nine consecutive days of work in late July and early August. Her sister, Maureen Weymer, and sister-in-law, Brenda Martens, corroborated her testimony, in that she showed them the thenar collapse in April but told them it did not hurt and it did not appear disabling. They further testified she informed them both at the end of July that her left hand was becoming painful and numb.

In support of its denial, Dillards entered medical records from Dr. Bray's office dating from February 18, 2013, through October 21, 2016. During that interval, Ms. Wiles visited Dr. Bray's office over a dozen times before August 8, 2016, and at each visit the records note in both the "active problems" and the "previous medical history" sections that she suffers from "carpal tunnel syndrome; left," along with a host of other physical ailments. However, nothing in the records indicates Dr. Bray provided any treatment for carpal tunnel syndrome prior to August 8. (Ex. 12.)

3

## Findings of Fact and Conclusions of Law

Ms. Wiles has the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). Ms. Wiles need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). At an expedited hearing, she has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *Id.*

### *Notice*

In order to obtain benefits, Ms. Wiles must first establish she is likely to prevail on the issue of notice. For injuries occurring after July 1, 2016, Tennessee Code Annotated section 50-6-201(a) (2016) provides that the employee has fifteen days to provide the employer with notice of an injury unless the employee has a "reasonable excuse" for failure to do so. With regard to repetitive trauma injuries, section 50-6-201(b) (2016) provides:

> In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representative shall provide notice of the injury within fifteen days after the employee:
>
> (1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in a permanent impairment; or
>
> (2) Is rendered unable to continue to perform the employee's normal work activities as a result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

In Ms. Wiles' case, she testified without contradiction that upon prodding from Dr. Thomas for a specific incident related to her symptoms, she recalled suffering a "transient" sensation akin to a prick or shock in her left wrist while moving a rack of clothes in April 2016. However, this sensation was not accompanied by further pain or numbness, and she did not have trouble performing her job duties at that time. She further testified, again without dispute, that while she noticed her left thenar muscle "collapsed" a few weeks later, it did not cause her any pain or numbness nor did it interfere with her ability to do her job. Furthermore, she averred she did not know at the time why it occurred, despite the fact that she later mentioned it in her accident report. Her family's testimony, as well as the fact that Ms. Wiles visited Dr. Bray's office

4

several times during in the months following the April 2016 episode, yet never sought active treatment for her left hand, corroborates Ms. Wiles' testimony in this regard.

She further testified that, while she began experiencing some numbness and intermittent episodes of pain in her hands in July, it was not until she worked nine consecutive days in late July and early August, culminating in an eleven-hour shift on the ninth day, that the pain and numbness in her left hand and wrist became constant and disabling. Again, Dillards did not contest this testimony. On August 8, within fifteen days of this exacerbation in her symptoms, Ms. Wiles provided notice to her supervisor of her suspected work-related injury. Therefore, based on the record provided, the Court finds Ms. Wiles provided notice within fifteen days of suffering a disability due to a suspected work injury and holds she is likely to establish she provided adequate statutory notice to Dillards. *See Maples v. Fed. Mogul Corp.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 8 at *17-19 (Feb. 17, 2016).

## *Causation*

Ms. Wiles must next establish she is likely to prevail on the issue of causation. In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

Dillards does not dispute that Dr. Thomas is an authorized doctor, and thus his opinion on causation is entitled to a presumption of correctness that can only be rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2016). Dr. Thomas clearly gave his opinion that Ms. Wiles' left carpal tunnel syndrome was primarily due to her employment with Dillards. Thus, the burden shifted to Dillards to establish it is likely to rebut Dr. Thomas' opinion by a preponderance of the evidence at a hearing on the merits in order to justify its denial of benefits. *Id.*

Dillards did not offer any medical opinions to counter that of Dr. Thomas. Instead, in its effort to rebut Dr. Thomas' opinion, Dillards primarily relied on medical records from Dr. Bray's office that made multiple references to "carpal tunnel syndrome-left," from 2013 through 2016 despite Ms. Wiles' adamant denial that she ever suffered pain and numbness in her left upper extremity prior to July 2016.

While the Court does find these references problematic, particularly in light of Ms. Wiles' complete failure to address them in the evidence she provided, it does not find

them sufficient alone to rebut Dr. Thomas' opinion. While the records certainly include references to left carpal tunnel syndrome, they are in an area that appears to be repeated from visit to visit without variation and have nothing to do with Dr. Bray's active treatment of Ms. Wiles. Furthermore, Dillards did not provide any evidence that it asked Dr. Thomas to consider his opinion in light of this evidence, nor did it seek the opinion of any other physician. Indeed, Dillards did not even ask Ms. Wiles to explain the references during the hearing. Therefore, Dillards has not provided sufficient evidence at this stage to convince the Court to deny Ms. Wiles' claim.

Nevertheless, as stated above, the Court does find Dr. Bray's unexplained records problematic. In light of these records, the Court holds that Ms. Wiles has yet to prove she is likely to prevail at trial with regard to her entitlement to temporary disability benefits or reimbursement for expenses incurred through Dr. Weikert's treatment. However, while she has yet to establish compensability, the Court holds that she has provided sufficient evidence to entitle her to a panel of orthopedic specialists as recommended by Dr. Thomas before Dillards denied her claim. *See Lewis v. Molly Maid*, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *9 (Apr. 20, 2016). Therefore, the Court holds Dillards shall provide Ms. Wiles with a panel of orthopedic specialists from which she may choose an authorized physician for evaluation, and if necessary, further treatment of any injury arising primarily out of and in the course and scope of her employment.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Dillards shall provide Ms. Wiles with a panel of orthopedic specialists from which she may choose an authorized physician for evaluation and, if necessary, further treatment of any injury arising primarily out of and in the course and scope of her employment.

2.  Ms. Wiles' request for temporary disability benefits and reimbursement of expenses for Dr. Weikert's treatment is denied at this time.

3.  This matter is set for a Scheduling Hearing/Status Conference on March 15, 2017, at 2:30 p.m. C.T.

**ENTERED THIS THE / st DAY OF FEBRUARY, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

6

## Scheduling Hearing/Status Conference:

A Scheduling Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Hearing.

Please Note: **You must call in on the scheduled date/time to participate.** Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

## APPENDIX

Exhibits:

1.  Records from Concentra Medical Centers
2.  Notice of Denial
3.  Notice of Filing Wage Statement
4.  Records of Dr. Douglas Weikert
5.  Ms. Wiles' affidavit
6.  Letter from Dr. Frank Thomas
7.  Letter from Brittany Marks, FNP-C
8.  Job description from Dillards
9.  Work Comp Investigation Report
10. First Report of Injury
11. Recorded Statement
12. Records from Murfreesboro Medical Clinic
13. Handwritten statement of Ms. Wiles

Technical Record:

1.  Petition for Benefit Determination
2.  Dispute Certification Notice
3.  Request for Expedited Hearing
4.  Dillards' Position Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order For Benefits was sent to the following recipients by the following methods of service on this the 1 st day of February, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Ellen Wiles | X | | X | 2214 Adams Circle Murfreesboro, TN 37129 wilesdavide@bellsouth.net |
| James Tucker | | | X | jtucker@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov